**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Kevin Harris, individually and on behalf of all others similarly situated, | 1:21-cv-04359 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Kashi Sales, L.L.C., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Kashi Sales, L.L.C. ("defendant") manufactures, labels, markets, and sells Soft Baked Breakfast Bars ("cereal bars") labeled as "Mixed Berry" under the Kashi brand ("Product").



## I. MIXED BERRY AND HONEY CLAIMS

2. The front label shows a bar with dark purple filling, a background of various shades of purple, defendant's logo with a swaying stalk of wheat, the statements, "Mixed Berry," "3g

Fiber,*" "Made with Wildflower Honey," and "10g Whole Grains," and a seal indicating "Non-GMO Project Verified."

3.      The back of the package identifies the components of the "mixed berries," through images of two fresh blueberries, one plump blackberry and a ripe strawberry, along with a smattering of freshly harvested oats.

4.      The purple background contains the statements "Simply Delicious," and Delightfully Nutritious," and declares:

# Good Vibes in Every Bar

These bars were made for you with love. Love for delicious snacks that high five your taste buds. Love for simple ingredients, like berries and whole grains. And love for our farmers, our community, and our planet. Grab a bar and spread the good vibes!



5.      The representations are misleading because they give consumers the impression the fruit filling contains a greater relative and absolute amount of mixed berries and honey than it does.

2

## II.    INCREASE IN CONSUMER SNACKING FUELS EMPHASIS ON HEALTHY INGREDIENTS

6.    Research has shown that "consumers are eating fewer meals, yet snacking more than ever."[1]

7.    Defendant is aware that a greater percentage of consumers are eating more snacks and has emphasized the importance of fruit ingredients to make up for what "people don't get enough of at meals."[2]

8.    According to one company, "[A]s snacking increases, so too does the focus on healthy products and ingredients."[3]

9.    Many consumers seek snacks which are a "healthy indulgence," which is a "a treat with all the flavor and taste desired, without the guilt of eating something 'bad' for you," due to the presence of ingredients known to confer positive health benefits.[4]

## III.    CONSUMERS VALUE BERRIES

10.    Three of the most popular and widely consumed berry fruits are strawberries, blueberries, and blackberries.[5]

11.    Americans increasingly turn to berry fruits for adding value to all types of food.

12.    According to the U.S. Department of Agriculture, the average American consumes several times more berries per year than they did decades ago.

13.    This is due to berries having a higher nutrient density than almost all other fruit groups, such as stone and rose fruits.

14.    According to WebMD, berries provide nutritive and health benefits, such as

---

[1] Elizabeth Louise Hatt, Snackin' in the sun, Winsight Grocery Business, May 1, 2013.
[2] The Story on Snacking, Kellogg's Nutrition.
[3] Mondelez Global, State of Snacking: 2020 Global Consumer Snacking Trends Study.
[4] FONA International, Trend Insight: Indulgence, November 28, 2018.
[5] Though the strawberry is not, from a botanical point of view, a berry, it is considered a berry by consumers.

promoting heart health, increasing HDL (good) cholesterol, lowering blood pressure, and guarding against cancer.[6]

15.     Berries are an excellent source of vitamin C, necessary for immune and skin health.

16.     Berries have uniquely high levels of antioxidants known as polyphenols.

17.     Polyphenols are micronutrients that naturally occur in plants.

18.     These polyphenols include flavonoids, ellagitannins, flavanols and phenolic acid.

19.     Polyphenols prevent or reverse cell damage caused by aging and the environment, which is linked to greater risk of chronic diseases.

20.     These benefits from berries can only be provided by berry ingredients – actual strawberries, blackberries, and blueberries.

21.     These positive effects are incapable of being provided by "berry flavor," which can be described as the extracts from these fruits and used only to affect a food's taste, without any nutritional value.

## IV.    BERRIES ARE VALUED ABOVE OTHER FRUITS

22.     It is not just consumers' subjective preferences which value berries over other fruits.

23.     Market price data confirms that berries, when compared to other fruit groups, like stone fruits, are perhaps the most expensive of the major fruit groups.

24.     For instance, consumer price data tracked by the Bureau of Labor Statistics ("BLS") shows that strawberries are consistently more expensive than other non-berry fruits.

---

[6] Andrea Gabrick, Nutritional Benefits of the Strawberry, WebMD.com; María Teresa Ariza, et al. "Strawberry achenes are an important source of bioactive compounds for human health." *International journal of molecular sciences* 17.7 (2016): 1103.



**Chart 1. Average fruit prices, 2004–2014**

25.     According to BLS, apples are typically between $1.20 and $1.50 per pound while strawberries are no less than between $2 and $4 per pound.[7]

26.     According to recent data from the USDA, pears are $1.552 per pound, while strawberries, at $2.318 per pound, are almost fifty (50) percent more expensive.



| Year | Jan | Feb | Mar | Apr | May | Jun | % chg. JUN ↓ | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021 | NA | NA | NA | NA | NA | NA | | NA | NA | NA | NA | NA | NA |
| 2020 | NA | NA | NA | NA | NA | NA | | NA | NA | NA | NA | NA | NA |
| 2019 | 1.634 | 1.586 | 1.601 | 1.601 | 1.635 | 1.614 | -0.4% | 1.552 | NA | NA | NA | NA | NA |
| 2018 | 1.641 | 1.560 | 1.558 | 1.521 | 1.568 | 1.621 | -1.1% | 1.662 | NA | NA | NA | 1.513 | 1.570 |
| 2017 | 1.577 | 1.570 | 1.599 | 1.602 | 1.597 | 1.639 | -0.7% | 1.629 | 1.653 | NA | NA | 1.614 | 1.545 |

APU0000711413 Pears, Anjou

| Year | Jan | Feb | Mar | Apr | May | Jun | % chg. JUN ↓ | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021 | 3.044 | 2.893 | 2.700 | 2.803 | 2.648 | 2.318 | 14.8% | NA | NA | NA | NA | NA | NA |
| 2020 | 2.884 | 2.558 | 2.367 | NA | 2.174 | 2.020 | -2.2% | 2.020 | 2.214 | 2.234 | 2.745 | 2.934 | 3.290 |
| 2019 | 3.279 | 2.872 | 2.475 | 2.504 | 1.972 | 2.066 | 6.6% | 2.111 | 2.010 | 2.153 | 2.402 | 2.604 | 3.096 |
| 2018 | 2.872 | 2.492 | 2.227 | 2.475 | 2.079 | 1.938 | -0.7% | 2.007 | 2.004 | 2.147 | 2.216 | 2.502 | 3.166 |
| 2017 | 2.612 | 2.367 | 2.318 | 2.204 | 2.060 | 1.952 | 1.5% | 2.036 | 1.979 | 2.256 | 2.335 | 2.863 | 3.089 |

APU0000711415 Strawberries, dry pint, per 12 oz. (340.2 gm)

27.     Blackberries and blueberries are even more expensive than strawberries.

---

[7] Stephen B. Reed, "Slicing through fruit price volatility," Beyond the Numbers: Prices and Spending, Vol. 3:28, Bureau of Labor Statistics, December 2014.

## V. STATE AND FEDERAL REGULATIONS REQUIRE FRONT LABEL TO DISCLOSE THAT FRUIT FILLING HAS MORE PEAR INGREDIENTS THAN ANY SINGLE MIXED BERRY

28.     Federal and identical state regulations require that a product's front label contain a common or usual name which accurately identifies or describes, "in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a); Illinois Food, Drug and Cosmetic Act, 410 ILCS 620/1 et seq.; 410 ILCS 620/21(j) ("[a] federal regulation automatically adopted pursuant to this [Federal Food, Drug & Cosmetic] Act takes effect in this State on the date it becomes effective as a Federal regulation.").

29.     Defendant's representations violate 21 U.S.C. § 343(a)(1) and 410 ILCS 620/11, which deem food misbranded when the label contains a statement that is "false or misleading in any particular."

30.     Thus, a violation of federal food labeling laws is an independent violation of Illinois law and actionable as such.

31.     The Illinois Consumer Fraud and Deceptive Business Practices Act provides protection for consumers purchasing products like Defendant's Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

32.     Whether a breakfast bar contains a mixed berry as its predominant filling ingredient – or if it contains a predominant amount of pears – is basic front label information consumers rely on when making quick purchasing decisions at the grocery store.

33.     Characterizing ingredients are those which have a material bearing on price or consumer acceptance of the food, or which a consumer might otherwise believe to be present in

6

an amount greater than is the case.

34.    The Product's common or usual name of "Mixed Berry – Soft-Baked Breakfast Bars," is false, misleading, and deceptive because berries – strawberries, blueberries, and blackberries – are not its characterizing ingredients.

35.    The Product's "mixed berry filling" has a predominant ingredient of pears, and significantly less berry ingredients than expected.

**Ingredients:** Mixed berry filling (pear juice concentrate, tapioca syrup, cane sugar, blueberry puree concentrate, apple powder, corn starch, vegetable glycerin, blackberry puree concentrate, blueberry juice concentrate, strawberry puree concentrate, natural flavors), **Kashi Seven Whole Grain** flour (oats, hard red wheat, brown rice, rye, triticale, barley, buckwheat), whole wheat flour, whole grain oats, invert cane syrup, expeller pressed canola oil, honey, chicory root fiber, vegetable glycerin, tapioca syrup, leavening (sodium acid pyrophosphate, baking soda), soy lecithin, xanthan gum, natural flavors.

**Ingredients:** Mixed berry filling (pear juice concentrate, tapioca syrup, cane sugar, blueberry puree concentrate, apple powder, corn starch, vegetable glycerin, blackberry puree concentrate, blueberry juice concentrate, strawberry puree concentrate, natural flavors), **Kashi Seven Whole Grain** flour (oats, hard red wheat, brown rice, rye, triticale, barley, buckwheat), whole wheat flour, whole grain oats, invert cane syrup, expeller pressed canola oil, honey, chicory root fiber, vegetable glycerin, tapioca syrup, leavening (sodium acid pyrophosphate, baking soda), soy lecithin, xanthan gum, natural flavors.

36.    The relative amounts of the ingredients in the filling are determined based on their listing in order of predominance by weight. 21 C.F.R. § 101.4(a)(1).

37.    The most predominant ingredient is pear juice concentrate, followed by tapioca syrup and cane sugar, followed by blueberry puree concentrate, apple powder, corn starch, vegetable glycerin, and finally, blackberry puree concentrate, blueberry juice concentrate and strawberry puree concentrate.

38.    The amount of apple ingredients in the Product exceeds that of blackberries and strawberries (separately).

39.    Not only does the Product have a predominant ingredient of pears, it also contains more sugar – tapioca syrup and cane sugar – than any individual berry fruit.

40.    The Product's name is required to, but fails, to include the percentage of the characterizing strawberry, blueberry, and blackberry ingredients, because the amount of these mixed berries has a material bearing on price or consumer acceptance.

41.    The front label is required to disclose the percentage of the individual mixed berry ingredients relative to the other fruits, i.e., "10% Strawberry, 20% Blueberry, 40% Pear, 10% Blackberry, 20% Apple." 21 C.F.R. § 102.5(b).

42.    The labeling creates an erroneous impression that the Product contains more mixed berry ingredients than it does.

43.    The Product's name, "Mixed Berry – Soft-Baked Breakfast Bars," is misleading because it includes "Mixed Berry," but does not include pears and apples, even though these fruits are stated in the fine print on the ingredient list. 21 C.F.R. § 101.18(b).

44.    Cereal bars which contain mixed berries as their predominant filling ingredient are not a rare or pricy delicacy that would make a reasonable consumer "double check" the relative

amount of the mixed berries by scouring the label.

45. Cereal bars with fruit fillings which contain a berry as a first and predominant ingredient exist in the marketplace and are not technologically or otherwise unfeasible to produce.

46. For instance, competitor cereal bars from Hill Country Fare (H-E-B) and Great Value (Walmart) are described as "mixed berry," but they put consumers on notice that they have *less* mixed berries than consumers would otherwise expect, through the statement, "Naturally Flavored."





47. The mixed berry cereal bars from Hill Country Fare and Great Value also contain one of the pictured berries as their fillings' first ingredient.

48. Consumers who seeing defendant's Product, which exclusively promotes mixed berries, and the more "restrained" or truthful labeling of competitors, will purchase defendant's Product, believing it is higher quality than it is.

49. The FDA has consistently warned companies that fail to describe their products with a non-misleading, common or usual name:

> Your Sour Cherry Juice (two unique brand names) and Sour Grape Juice (four unique brand names) products are misbranded within the meaning of section 403(i)(1) of the Act [21 U.S.C. § 343(i)(1)] because the statement of identity does not bear an accurate common or usual name. According to 21 CFR 102.33(a), for a carbonated or noncarbonated beverage that contains less than 100 percent and more than 0 percent fruit or vegetable juice, the common or usual name shall be a descriptive name that meets the requirements of 21 CFR 102.5(a).[8]

50. The marketing and sale of foods which are advertised as containing valuable berries, but are mainly comprised of other, less valuable fruit ingredients, is not unknown within this Circuit.

51. In the fall of 1960, the FDA seized a shipment of "Strawberry Bars" where:

> strawberries, had been in whole or in part omitted or abstracted therefrom; 402(b)(4) – figs and dates had been mixed or packed with the articles so as to increase their bulk or weight and make them appear of greater value than they were; and 403(a)-the label statements and the label vignettes depicting whole fresh fruit, apricots and strawberries, were false and misleading as applied to an article (Apricot Bars) containing no apricots, and an article (Strawberry Bars) containing a mixture of figs and dates and some strawberries.

> FDA, Notices of Judgment, No. 28302, "Fruit Bars," F.D.C. No. 45358, E. Dist. Mich., July 11, 1961.

52. The Product is unable to confer any of the health-related benefits of mixed berries because the amount of mixed berry ingredients is insufficient to provide the benefits of these fruits.

---

[8] FDA Warning Letter, Shemshad Food Products, Inc., W/L 28-11, March 11, 2011.

53. The Product does not even taste like mixed berries, but like pears and apples.

54. If the Product tasted like mixed berries from containing mixed berry ingredients, there would be no need to add "NATURAL FLAVORS" to simulate a mixed berry taste.

## VI. HONEY IS MISREPRESENTED AS MAIN SWEETENING INGREDIENT

55. The front label promotes the presence of honey – "Made with Wildflower Honey."

56. This representation conveys that honey is the exclusive, primary and/or most significant sweetener in the Product and is present in an appreciable amount.

57. However, the Product is sweetened primarily with sugar and contains a miniscule amount of honey.

### A. Sugar Disfavored as Sweetener

58. In 2014, the National Institutes of Health cautioned: "experts agree that Americans eat and drink way too much sugar, and it's contributing to the obesity epidemic. Much of the sugar we eat isn't found naturally in food but is added during processing or preparation."

59. The NIH noted further: "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide."

60. There has long been a consensus among doctors and nutritionists that "[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity."

61. In addition, "there is emerging research that suggests high-sugar diets may increase the risk of developing [dementia]."

62. As part of a societal trend toward consuming healthier foods and natural foods, avoidance of added sugar has been and remains a significant consumer preference, with consumers

strongly favoring honey as a sugar substitute.

63.   At least in part due to growing consumer awareness of health problems caused by excessive sugar consumption, in recent years consumers have shown a distinct preference for products with little or no added sugar.

64.   In August 2016, an article in "Prepared Foods" magazine noted that "[o]ngoing concerns about obesity and sugar intake have driven interest in reduced sugar and diet drinks in recent years."

65.   As another observer of the food industry explained in May 2017: "[h]ealth concerns and better educated consumers are propelling the demand for sugar reduction across food and beverage categories…Sugar reduction will be one of the top marketing claims prominently featured on products  in   the  coming  year…"

66.   Similarly, an article in the February 28, 2018, edition of "Food Business News" reported that "[s]peakers addressing consumer trends at the International Sweetener Colloquium in Orlando on February 13 said sugar avoidance was a macro trend 'that is here to stay and will only increase.'"

67.    The same article noted that "I.R.I. [Information Resources, Inc.] surveys show that 58% of consumers across generations are avoiding sugar…[and of] those avoiding sugar, 85% are doing so for health reasons and 58% for weight concerns."

B.   Consumer Preference for Products Sweetened with Honey Instead of Sugar

68.   Surveys show "[c]onsumers rated honey at 73% 'better for you than sugar."

69.   A survey highlighted in "Prepared Foods" magazine in 2018 noted that: (i) "93% of consumers consider honey to be a natural sweetener;" (ii) "58% of consumers with one or more children look for honey on the product label;" (iii) "60% of consumers between the ages of 18 and

34 look for honey on the product label; and (iv) about half of consumers would pay at least 5% more for food bars, ready-to-drink tea, and yogurt primarily sweetened with honey."

70.     Referring to food products perceived as healthier, the Huffington Post reported that "[a]ccording to a 2015 Nielsen survey of 30,000 people, 90% of shoppers are willing to pay more for the added quality and benefits."

71.     Honey is a naturally occurring substance and, unlike sugar, has small amounts of nutrients such as vitamins, minerals, enzymes, and antioxidants.

72.     In addition, honey has a lower glycemic index than sugar, meaning that it causes slower fluctuations in blood glucose levels (often referred to as "blood sugar") and therefore in insulin levels as well.

73.     Rapid spikes of blood glucose levels lead to quick spurts of energy followed by sharp declines in energy characterized by tiredness, headaches, and difficulties in concentrating ("low blood sugar").

74.     Although sugar contains slightly fewer calories than honey by weight, honey is much sweeter than sugar and therefore less is needed to achieve the same level of sweetness.

75.     Based on the common marketplace perception that honey is healthier and more natural than sugar, consumers place a greater value on products that are sweetened with honey instead of sugar and are willing to pay a higher price for such products.

C.     <u>Contrary to Representation, Honey is Present in De Minimis Amount and Product is Sweetened Mainly with Sugar</u>

76.     The sweeteners in the Product include tapioca syrup, cane sugar, invert cane syrup and honey.

13

77.    Among the sweeteners in the Product, honey is present in the lowest quantity.[9]

78.    The Product contains more canola oil than honey, yet the front label does not tout this ingredient.

79.    The representation that the Product is made with wildflower honey is misleading because reasonable consumers will expect honey to be present in a greater amount than it is.

## VII.  CONCLUSION

80.    The cost of using more mixed berry and honey ingredients, relative to pears, apples and sugar, would be several cents per Product – not a significant addition to the price.

81.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other comparable products or alternatives.

82.    The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

83.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

84.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

85.    The Product is sold for a price premium compared to other similar products, no less than $4.59 for six 1.2 OZ (35g) bars, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

---

[9] Even though honey is listed ahead of tapioca syrup, this ingredient is listed twice as part of the filling, ahead of honey.

Jurisdiction and Venue

86.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

87.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

88.    Plaintiff Kevin Harris is a citizen of Illinois.

89.    Defendant Kashi Sales, L.L.C. is an Delaware limited liability company with a principal place of business in Battle Creek, Calhoun County, Michigan and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

90.    The parties are citizens of different states.

91.    Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

Parties

92.    Plaintiff Kevin Harris is a citizen of DeKalb, DeKalb County, Illinois.

93.    Defendant Kashi Sales, L.L.C., is a Delaware limited liability company with a principal place of business in Battle Creek, Michigan, Calhoun County.

94.    Defendant is a leading seller of organic and healthy snacks.

95.    Defendant's image is exemplified by its logo, with a stalk of wheat running across its company name, epitomizing the connection to farmers and healthy ingredients.

96.    The Product is sold at tens of thousands of retail locations – grocery stores, drug stores, big box stores, convenience stores, etc. – and online.

97.    The Product is sold in boxes of 6 bars, among other sizes.

98.    Plaintiff bought the Product on one or more occasions within the statute of limitations

for each cause of action alleged, at stores including Jewel-Osco, 800 N Main St, Elburn, IL 60119 and Schnucks, 975 S Annie Glidden Rd, DeKalb, IL 60115, between March and April 2021, among other times.

99.   Plaintiff bought the Product because she expected it would have more of the mixed berry ingredients.

100.   Plaintiff wanted more than a "mixed berry taste," but an appreciable amount of mixed berry ingredients, which was not received because the most predominant ingredients are pears and sugar.

101.   Plaintiff expected the filling would contain more mixed berry ingredients than it did and did not expect the main ingredient to be pears.

102.   Plaintiff did not expect that the filling would contain more pear ingredients than any single berry, and more apple than blackberry and strawberry.

103.   Plaintiff expected that honey would be the Product's primary sweetener or at a minimum, it would be present in an appreciable amount instead of a de minimis, negligible amount.

104.   Plaintiff prefers honey to sugar for the reasons described herein.

105.   Plaintiff bought the Product at or exceeding the above-referenced price.

106.   Plaintiff relied on the representations identified here.

107.   Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

108.   Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

109.   The Product was worth less than what Plaintiff paid and she would not have paid as

much absent Defendant's false and misleading statements and omissions.

110.   Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

Class Allegations

111.   Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

>   **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.

>   **Consumer Fraud Multi-State Class:** All persons in the States of Iowa, Ohio, Arkansas, and Texas who purchased the Product during the statutes of limitations for each cause of action alleged.[10]

112.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

113.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

114.   Plaintiff is an adequate representative because her interests do not conflict with other members.

115.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

116.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

117.   Plaintiff's counsel is competent and experienced in complex class action litigation

---

[10] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: Iowa (Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 et seq.); Ohio (Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109); Arkansas (Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et. seq.); and Texas (Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41 et. seq.).

and intends to protect class members' interests adequately and fairly.

118.  Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

119.  Plaintiff incorporates by reference all preceding paragraphs.

120.  Plaintiff and class members desired to purchase a product had a greater amount of berry and honey ingredients, and expected a non-de minimis amount of these ingredients.

121.  Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

122.  Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

123.  Plaintiff relied on the representations.

124.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

125.  The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

126.  Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

127.  As a result of defendant's use or employment of artifice, unfair or deceptive acts or

business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

128. In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

129. The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it had a greater amount of berry and honey ingredients, and expected a non-de minimis amount of these ingredients.

130. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

131. This duty is based on Defendant's outsized role in the market for this type of Product.

132. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

133. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

134. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

135. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

136. Defendant had a duty to truthfully represent the Product, which it breached.

137. This duty is based on defendant's position, holding itself out as having special

knowledge and experience this area, as custodian of the Kashi brand.

138.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a nationally recognized and trusted brand.

139.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

140.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

141.  Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it had a greater amount of berry and honey ingredients, and expected a non-de minimis amount of these ingredients

142.  Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

143.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the

20

challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: August 16, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com